(137 So. 13)

## STANDARD TILTON MILLING CO. v. TOOLE.

### 3 Div. 976.

Supreme Court of Alabama.

Oct. 15, 1931.

Ball & Ball, of Montgomery, for appellant.

Hill, Hill, Whiting, Thomas & Rives, of Montgomery, for appellee.

BROWN, J.

Action of assumpsit by the seller against the buyer of one thousand barrels of flour purchased for future delivery, for breach of the contract in failing to furnish shipping instructions, after which the plaintiff terminated the contract.

The questions presented on this appeal arise upon the ruling of the circuit court granting motions of the defendant to strike from count 2 of the complaint, as originally filed and as amended, the elements of damages claimed, superinducing a voluntary nonsuit by the plaintiff, and this appeal.

The provisions of the contract, a copy of which is made a part of the second count, pertinent to the questions presented are: On August 5, 1926, the defendant bought from the plaintiff one thousand barrels of flour at a stipulated price of $7.45, which included freight, specifying the time of shipment as of March 1, 1927, subject to the stipulations that: "The commodities covered by this contract shall be ordered shipped within sixty (60) days from the date of the contract, unless a shorter time is hereby specified. The buyer shall furnish to the seller, not less than fourteen (14) days prior to the expiration of the contract period, such specifications and instructions as will permit the seller to ship; provided, however, that the seller, on the contract covering the period of more than fourteen (14) days, shall have not less than fourteen (14) days from receipt of complete shipping instructions within which to make shipment."

It was further stipulated:

"Upon failure on the part of the buyer to furnish shipping instructions when due, * * * the seller may, upon notice to the buyer, by telegram or letter addressed to the buyer's last known place of business, exercise the following options * * * (b) or (c): * * *

"(b) To terminate that portion of the contract on which there has been default, with an entry charge to be paid by the buyer of fifty cents per barrel, * * * and in addition, the buyer shall pay to the seller such loss, damage and expense as may arise through his failure to carry out the provisions of this contract. The measure of the aforesaid seller's loss and damage and expense shall be the difference between the contract price, less any freight included in the contract price, and the seller's cost of replacement at dates of cancellation. For the purpose of this contract the seller's cost of replacement shall be determined at the option of the seller by either of the following methods:

"1. The seller's cost of manufacturing and preparing for shipment an equal quantity of the commodities covered by this contract.

"2. The price at which the seller could purchase an equal quantity of the commodities covered by this contract.

"(c) Extend the shipping period for thirty (30) days, *invoicing to the buyer* as a carrying charge of fifteen cents per barrel * * * for thirty (30) days or a fraction thereof. Demand draft covering such invoice as provided herein *may be made* upon buyer when shipping instructions are due and such extention of shipping period is not to be effective until buyer has honored draft

against him for carrying charges herein mentioned. In the event the draft for carrying charges is not paid by the buyer on presentation, the seller shall then have the right to exercise clauses (a) or (b). At the end of any extended period seller shall again have the right to exercise clause (a), (b) or (c)." (Italics supplied.)

In respect to the "carrying charges" the original count averred "that plaintiff carried said flour, under the terms of said contract, from, towit: August 1, 1927, to December 1, 1927, for which the defendant became liable to the plaintiff under the terms of said contract for fifty cents per barrel, or, towit: $500.00."

The amendment to count 2 merely added the following words: "That at the time said contract was made it was understood by both parties that said flour had not been manufactured and it was contemplated that the plaintiff should at once buy wheat necessary to manufacture it upon receipt of specifications and directions from the defendant; that after the defendant failed to furnish specifications and directions on or before March 1, 1927, as required by said contract, the time for furnishing the same was by mutual consent and upon payment by defendant of $200 carrying charges, extended to, towit, July 31, 1927; that the defendant promised from time to time to furnish said specifications and directions but failed to do so; that although plaintiff was able, ready and willing to comply with said contract, the defendant failed and refused to furnish said specifications and directions; that plaintiff continued to request defendant to furnish the same both by letters and by its traveling salesman until, to-wit, the latter part of November, 1927, but the defendant still failing to do so the plaintiff on, to-wit, December 10, 1927, notified the defendant by letter that it had terminated the contract as of December 9, 1927, and demanded the payment of the damages stipulated in said contract, to-wit, carrying charges $500.00 and cancellation charges $500.00 against which it offered to give a credit of $300.00 on account of the increase in the price of such wheat," etc.

■ Taking the contract as a whole, it is too clear to permit of controversy that the stipulation in option (b), authorizing the seller to terminate the contract "with an entry charge to be paid by the buyer of fifty cents per barrel," and claimed on the complaint as "cancellation charges," was not intended by the parties to cover the actual amount of the loss as estimated in advance, but was intended and fixed as an "arbitrary sum to coerce performance or punish default" in addition to the actual damages resulting from the breach of the contract.

But actual damages resulting from such breach other than elevator and warehouse damages incident to carrying the wheat or the flour, from month to month, are fully provided for; the parties stipulating as to the method of ascertaining such damages. This under the authorities condemns the cancellation charges as a mere penalty, and this element of the claim was stricken without error. Walshe Mfg. Co. v. W. T. Smith Lumber Co., 178 Ala. 472, 59 So. 455; in the cited case on second appeal, the opinion of Mr. Justice Sayre, 196 Ala. 371, 72 So. 73.

■ As to the claim for carrying charges, we entertain a different view, and here, we may observe, the motion to strike cannot serve the purpose of demurrer, the averments of the complaint on motion to strike, whether well or illy pleaded, will be taken as true, and if it appears therefrom that the charges accrued as provided in the contract, as the count avers, and looking to the whole instrument, and the surrounding facts and circumstances attending the execution of the contract, and therefrom it appears that the parties have in good faith, contracted for a legitimate element of expense reasonably related to and attending the extension of the time for performance so as to keep the contract alive, the amounts stipulated for must be treated as liquidated damages, and recoverable.

The parties contemplated that the seller should be able and ready to perform on fifteen days' notice, and to this end must keep on hand or available on call, at the grain elevators, wheat to be manufactured into flour, or manufacture and hold the flour in the warehouse ready for shipment, and as an incident would incur elevator or warehouse charges. The carrying charges provided in the contract were to cover such incidental expense, and the parties violated no principle of law in providing in advance for such carriage.

So, whether the carrying charges be treated as actual damages for breach of the contract, or as consideration for prolonging the contract by extending the time for the buyer's shipping instructions, if the seller complied with the stipulations of option (c), it was a legitimate element of plaintiff's recovery. Sheffield-King Milling Co. v. Domestic Science Baking Co., 95 Ohio St. 180, 115 N. E. 1014; Christian Mills, Inc. v. Berthold Stern Flour Co., 247 Ill. App. 1; Erie Baking Co. v. Hubbard Milling Co. (C. C. A.) 217 F. 759; 4 Page on Contracts, § 2132.

■ But appellee's contention at this point is that the provision, option (c), contemplated that the seller, in case of such extension, must make demand draft covering such invoice, and the extension was not effective unless the draft was honored by the buyer, and hence no unpaid claims for carriage could accrue. This, we think, is a misconception of the full scope of the provisions. It provides for two methods of extension, by "invoicing to the

buyer as to carrying charges of fifteen cents per barrel." Without more, if the seller was content to carry without cash payment of the charges, and if it was not willing to make the extension on charge account, it had the further option to make demand draft, mak-, ing payment of the draft a condition precedent to the extension.

Whether the seller complied with the stipulation in this respect, or not, was a matter depending on the proof to be taken.

■ It may be noted.here that the provisions made in option (b) for ascertaining the "actual damages" in case of breach were not broad enough to embrace carrying charges for extension of the time for furnishing shipping instructions.

The judgment here is that the circuit court erred in granting the motion to strike the claim for carrying charges, and for this error the judgment must be reversed. It is so ordered.

Reversed and remanded.

ANDERSON, C. J., and THOMAS and FOSTER, JJ., concur.