514 So.2d 987 (1987)
CAMELOT MUSIC, INC.
v.
MARX REALTY & IMPROVEMENT COMPANY, INC.
86-206.
Supreme Court of Alabama.
September 25, 1987.
*988 Stephen M. Wilson, Huntsville, for appellants.
Daniel F. Aldridge of Brinkley & Ford, Huntsville, for appellee.
MADDOX, Justice.
Marx Realty & Improvement Co., Inc. ("Marx Realty"), filed a complaint in the Circuit Court of Madison County against Camelot Music, Inc. ("Camelot"), demanding a judgment against Camelot for $11,067.64, plus interest, costs, and attorney fees. In the first count of the complaint, Marx Realty alleged that Camelot had "failed to pay rent installments and other leasing charges as set forth in the lease contract as the same fell due and that the rent installments and other leasing charges were then past due and unpaid." In count two of the complaint, Marx Realty alleged that Camelot "has failed to pay the rent installments and other leasing charges set forth in said lease contract as the same became due, and that there are now past due and unpaid $11,067.64 rent installments... security charges, merchant dues, common area dues and other expenses." Camelot filed a motion to dismiss but did not file an answer to the complaint.
The trial was set for July 15, 1986. On the date of trial, Marx Realty filed an application for a default judgment for $28,418.03, this sum consisting of accrued rent in the amount of $25,388.88, with the balance constituting costs and attorney fees. In addition, Marx Realty amended its complaint by adding another claim for $47,206.48 due in monthly installments through December 31, 1988.
After Marx Realty filed the application for default judgment and the amendment to the complaint, Camelot filed an answer and in the same pleading demanded a jury trial. The trial court refused to grant a default judgment, allowed the amendment to the complaint, allowed Camelot's answer, and refused the jury demand as untimely. After a hearing, the trial court entered a judgment for Marx Realty in the amount of $75,452.01. Camelot then filed a *989 motion for a new trial, which was denied. Camelot appeals from that judgment.
This case involves the following facts: In August 1978, Marx Realty executed a lease to Camelot Music for a unit in "The Mall" in Huntsville, Alabama. The lease agreement between Marx Realty and Camelot was for a term of ten years, with fixed minimum rent at $17,200 per annum through December 31, 1979, and $18,813 per annum from January 1, 1980, through December 31, 1988. The rent was to be paid in advance in equal monthly installments.
Camelot took possession of the leased unit on August 16, 1978. This particular mall in Huntsville experienced a dramatic decline in business and by the time of the trial of this case, only 50% of the stores in The Mall were occupied. Camelot Music terminated the lease and moved out of The Mall in March 1985. Marx Realty filed its complaint in November 1985.

I
The first issue raised on appeal is whether the trial court erred when it refused to grant Camelot's demand for a jury trial. Camelot contends on appeal that its demand for a jury trial, filed after Marx Realty's motion for a default judgment and amendment, was a timely demand for a jury trial pursuant to Rule 38(b), Ala.R. Civ.P. Camelot asserts that the amendment filed by Marx Realty adjusting the amount of damages created a "new issue" in this case, entitling it to a jury trial.
Rule 38(b), Ala.R.Civ.P., provides:
"Any party may demand a trial by jury of any issue triable of right by a jury by serving upon the other parties a demand therefor in writing at any time after the commencement of the action and not later than 30 days after the service of the last pleading directed to such issue. Such demand may be indorsed upon a pleading of the party, and such demand shall be deemed to be a demand for a struck jury."
This rule establishes a time limitation for making a jury demand, which is dependent upon the date of service of the "last pleading directed to such issue." Dorcal, Inc. v. Xerox Corp., 398 So.2d 665 (Ala. 1981). It is well-settled law in this state that when the 30-day period of Rule 38(b) has run, an amendment that does not set forth new issues will not give rise to the right to demand a jury. Hamon Leasing, Inc. v. Continental Cars, Inc., 358 So.2d 442 (Ala. 1978). In Brown Mechanical Contractors, Inc. v. Centennial Ins. Co., 431 So.2d 932 (Ala. 1983), this Court stated the following regarding a jury demand made following a motion for a default judgment:
"Goodner argues that it satisfied the timeliness requirement of Rule 38(b) by including its jury demands with its answers. Republic argues persuasively in reply that its motion for default precluded Goodner from claiming a jury trial as a matter of right, because Goodner's demand was timely only in relation to its late answer, see Dorcal, Inc. v. Xerox Corporation, 398 So.2d 665, 670 (Ala. 1981). In Dorcal we noted that a party could preclude filing of a late answer and jury demand by previously `securing an entry of default.' Here, Republic's motion for default was never ruled upon. It was sufficient, however, for Republic simply to have filed its motion. The trial court then had discretion under Rule 55 to enter a default judgment and thus preclude an answer and jury demand. Subsumed within this discretion was the alternative of allowing Goodner to proceed, but without a jury. Accordingly, we conclude that the trial court was justified in striking Goodner's jury demand as untimely against Republic."
431 So.2d at 939.
After examining this Court's opinion in Brown Mechanical Contractors, Inc. v. Centennial Insurance Co., supra, we are of the opinion that the trial court did not err when it denied Camelot's demand for a jury trial. In this case, Marx Realty filed its complaint in November 1985, and the case was set for trial on July 15, 1986. We hold that because Marx Realty had filed a motion for default before the jury demand was filed, the trial court could legally deny Camelot's jury demand.

*990 II
The second issue raised on appeal is whether the trial court erred when it held that the liquidated damages provision of the lease agreement was valid. Camelot contends that it is invalid in that the trial court's ruling had the effect of holding that the lease agreement contained an acceleration clause for unaccrued rent.
We have examined the record in this case, and the only ruling by the trial court, after it heard the evidence itself, because of its denial of the jury demand, was an entry on the docket sheet which read:
"Judgment upon trial of case for plaintiff for $75,452.01."
The trial judge stated no specific reason or basis for his judgment; therefore, we cannot conclude that he, in fact, treated the subject lease as if it contained an acceleration clause for unaccrued rents, as Camelot argues.
We agree with Camelot's contention that there must be an express provision in a lease in order for it to provide for acceleration upon default, see, H.M. Price Hardware Co. v. Meyer, 224 Ala. 35, 138 So. 543 (1931), and after examining the lease between Marx Realty and Camelot, we agree that it does not allow Marx Realty to accelerate the due date of unaccrued rent payments, but, in this case, we are of the opinion that the lease contains a valid liquidated damages clause that will support the award of damages made by the trial judge. Section 10.3 of the lease provides, in pertinent part:
"In case of any such default, re-entry, expiration and or dispossession by unlawful detainer proceedings or otherwise ... (c) Tenant or the legal representative of tenant shall also pay landlord, as liquidated damages for the failure of tenant to observe and perform said tenant's covenants herein contained, any deficiency between the rent hereby reserved and or covenanted to be paid and the net amount, if any, of the rents collected on account of the lease or leases of the leased premises for each month of the period which would otherwise have constituted the balance of the term of this lease. In determining the rent which would be payable by tenant hereunder, subsequent to default, the annual rent for each year of the unexpired term shall be equal to the average of the fixed minimum and percentage rents paid by tenant from the commencement of the term to the time of default, or during the preceding three full calendar years, whichever period is shorter."
Camelot also contends that the trial court's award of $75,452.01 as liquidated damages was improper. Camelot asserts that this sum should be construed as a penalty rather than as liquidated damages.
It is true in Alabama that, because penalty provisions are void as against public policy, "Courts ... are disposed to lean against any interpretation of a contract which will make the provision one for liquidated damages and, in all cases of doubtful intention, will pronounce the stipulated sum a penalty." Cook v. Brown, 408 So.2d 143, 144 (Ala.Civ.App. 1981); see also, Keeble v. Keeble, 85 Ala. 552, 5 So. 149 (1888). In Alabama, liquidated damages are a sum to be paid in lieu of performance, Forsyth v. Central Foundry Co., 240 Ala. 277, 198 So. 706 (1940), while a penalty is characterized as a security for the performance of the agreement or as a punishment for default. Standard Tilton Milling Co. v. Toole, 223 Ala. 450, 137 So. 13 (1931). The courts generally identify three criteria by which a valid liquidated damages clause may be distinguished from a penalty. First, the injury caused by the breach must be difficult or impossible to accurately estimate; second, the parties must intend to provide for damages rather than for a penalty; and, third, the sum stipulated must be a reasonable pre-breach of the probable loss. See, C. Gamble and D. Corley, Alabama Law of Damages, § 5-4 (1982). Determining whether a liquidated damages provision is valid is a question of law to be determined by the trial court based on the facts of each case. Cook v. Brown, 408 So.2d 143 (Ala.Civ.App.1981).
*991 It is clear that the damages awarded by the trial court in this case are compensatory, are to be paid in lieu of performance, and are approximately in a sum that the parties reasonably could have expected to be suffered by the lessor in the event of a breach. In other words, the calculations by the trial court gave an amount that would have been paid had Camelot performed its obligations under the contract. Because the liquidated damages assessed here are those that Camelot reasonably could have expected to result from its breach of the contract, we hold that the liquidated damages clause of the contract was not a penalty, and that the trial judge did not err in assessing damages in the sum found by him to have been suffered by the lessor.
The judgment of the trial court is due to be, and it hereby is, affirmed.
AFFIRMED.
JONES, SHORES, ADAMS and HOUSTON, JJ., concur.
BEATTY and STEAGALL, JJ., dissent.
TORBERT, C.J., not sitting.
BEATTY, Justice (dissenting).
The majority opinion does not address the question presented here of whether the amended complaint, filed by Marx Realty on the day of the scheduled nonjury trial, raised a new issue that, pursuant to Rule 38(b), A.R.Civ.P., Hamon Leasing, Inc. v. Continental Cars, Inc., 358 So.2d 442 (Ala. 1978), and Ex parte Town of Citronelle, 428 So.2d 600 (Ala. 1983), would have allowed Camelot Music a jury trial as to, at a minimum, the new issue. Stated another way, the issue presented is whether the filing of a motion for default judgment, prior to the defendant's request for a trial by jury, serves to vitiate the defendant's right to a jury trial for any and all claims subsequently or contemporaneously filed against that defendant, even if these claims raise entirely new issues? I think not and, accordingly, I must respectfully dissent.
In the present case, Marx Realty originally sought "rent installments and other leasing charges [that] were then past due and unpaid," i.e., accrued rents and charges. It increased its ad damnum on the day of the trial to $28,418.03 to reflect the rents accrued up to the date of the trial on July 15, 1986, and filed a motion for default judgment. However, on the day of the trial, Marx Realty also amended its complaint, to assert a new claim for $47,206.48, which represented an amount due in unaccrued rents and charges from the date of the trial to the end of the original lease term on December 31, 1988. This amendment clearly raised for the first time a "new issue" concerning damages for unaccrued rents, regardless of whether the amount sought is categorized as accelerated rents or as liquidated damages. This amended complaint also raised, for the first time, the construction of § 10.3 of the lease.
Prior to this amendment, the action against Camelot had involved only past due and unpaid rents, but by seeking damages for unaccrued rents, the amended complaint presented a different claim and sought additional relief. The judgment entered by the trial court for the plaintiff in the amount of $75,452.01 included the amount sought in the amended complaint for unaccrued rents.
Under this Court's construction of Rule 38(b), two separate lines of cases have emerged that deal with the question of a Rule 38(b) waiver. In Hamon Leasing, Inc. v. Continental Cars, Inc., supra, and Ex parte Town of Citronelle, supra, we held that an amended complaint or a cross-claim that presented a "new issue" would revive a party's right to demand a jury trial, even though that right had been previously waived. In Hamon Leasing, Inc., we specifically held that the raising of a "new issue" would cover, at a minimum, the party's entitlement to demand a jury trial as to the new issue, 358 So.2d at 443, since Rule 38(b) allows the party to file a demand for a jury trial within "30 days after the service of the last pleading directed to such issues."
*992 We have also developed a line of cases, as evidenced by Dorcal, Inc. v. Xerox Corp., 398 So.2d 665 (Ala. 1981), and Brown Mechanical Contractors, Inc. v. Centennial Ins. Co., 431 So.2d 932 (Ala. 1983), that have held that the filing of a motion for default judgment precludes the ability of a party to file an answer to a cross-claim or counterclaim and to treat that answer as a "last pleading" for Rule 38(b) purposes.
The majority cites the latter line of cases in reaching its conclusion on the present case, but in so doing, the majority fails to recognize that Brown Mechanical Contractors, Inc., dealt solely with a motion for default judgment on an unanswered cross-claim that raised the same issue as the original complaint, i.e., Goodner's negligence. In fact, all of our cases to date that have addressed motions for default judgment as a means of avoiding the reviving of a Rule 38(b) waiver have concerned cross-claims or compulsory counterclaims on the same issue that was raised in the original complaint; none of them addressed the question of a "new issue." Furthermore, none of the cases that have dealt with the raising of a "new issue" has involved a default judgment.
This appeal raises for the first time the interrelationship of these two separate rules of law. Nonetheless, the majority opinion does not recognize this distinction, and as a result, it succeeds in partially overruling our holdings in Ex parte Town of Citronelle and Hamon Leasing, Inc., without addressing the essence of the defendant's appeal. As I see this case, the proper order of inquiry should be:
(1) Did the amended complaint raise a "new issue" that would give rise to an additional 30-day period in which the defendant could have sought a trial by jury pursuant to Rule 38(b) and the rule in Hamon Leasing, Inc.?
(2) If so, what effect, if any, would the motion for default judgment have on the appellant's right to a jury trial on this issue?
(3) If none, then did this "new issue" revive the appellant's right to a jury trial on all the issues?
While I agree with the majority that Brown Mechanical Contractors and Dorcal, Inc., would control on the issue of accrued rents, I cannot accept its reliance on Brown Mechanical Contractors for the proposition that a motion for default judgment waives the defendant's right to request a jury demand on any subsequently filed amendment when these amendments raise totally new issues. Accordingly, I must dissent.
I am equally concerned with the majority's treatment of the second issue on this appeal and must dissent on it as well, because I cannot perceive the grounds on which the trial court's judgment for unaccrued rents up to the end of the term of the lease can be sustained. I agree that the lease did not contain an acceleration clause, but I have difficulty affirming the judgment for the unaccrued rents, even recognizing the ore tenus presumption of correctness, and even assuming that the majority is correct in its conclusion that this was a valid liquidated damages clause. I dissent simply because the lease made no provisions for the collection of unaccrued rents.
Section 10.3(c) provided:
"Tenant or the legal representative of Tenant shall also pay Landlord as liquidated damages for the failure of Tenant to observe and perform said Tenant's covenants herein contained, any deficiency between the rent hereby reserved and/or covenanted to be paid and the net amount, of any of the rents collected on account of the lease or leases of the Leased Premises for each month of the period would otherwise have constituted the balance of the term of this lease. In determining the rent which would be payable by Tenant hereunder, subsequent to default, the annual rent for each year of the unexpired term shall be equal to the average Fixed Minimum and percentage rates paid by Tenant from the commencement of the term to the time of default, or during the preceding three *993 full calendar years, whichever period is shorter. The failure or the refusal of the Landlord to relet the Leased Premises or any part or parts thereof shall not release or affect Tenant's liability for damages. In computing such liquidated damages, there shall be added to the said deficiences such expenses as Landlord may incur in connection with reletting such as legal expenses, attorney's fees, brokerage and for keeping the Leased Premises in good order or for preparing the same for reletting. Any such liquidated damages shall be paid in monthly installments by tenant on the rent day specified in this lease and any suit brought to collect the amount of said deficiency for any month shall not prejudice in any way the right of Landlord to collect the deficiency for any subsequent month by a similar proceeding." (Emphasis added.)
Thus, the terms of § 10.3 clearly state that the liquidated damages would be the difference in the amount of the original lease ($1,567.75 per month) and the amount of rent of the new tenant ($795.71) (plus any expenses incurred by the landlord in connection with his reletting the premises). Further, these damages would be paid by Camelot in monthly installments on the rent date specified in Camelot's original lease. Section 10.3(c) did not give Marx Realty the right to collect liquidated damages for unaccrued rents up to the end of the term of the lease; rather by the terms of this lease, it could claim them only as the difference accrued. Accordingly, I would reverse the trial court's judgment on liquidated damages as well.
STEAGALL, J., concurs.