ADAMS, Justice.
Abb’s Moving Service, Inc., appeals a judgment in favor of Sara Wooldridge, Gerald Abb Wooldridge, and Robert P. Wool-dridge, trustees of the Harry Abb Wool-dridge, Jr., trust, in the amount of $95,-313.03 for rent due and late fees thereon.
Harry Abb Wooldridge owned and operated Abb’s Moving Service, Inc., prior to July 1987. He also owned the real estate on which that business was operated, and he leased the premises to Abb’s Moving Service. In 1987, however, Wooldridge began negotiating with Russell Christie for Christie to purchase the corporate stock in Abb’s Moving Service. Pursuant to the agreement between the parties, the corporation, owned by Christie, was to rent the real estate from Wooldridge.
Although an agreement for the stock purchase had been made, before the deal was closed the corporation and Mr. Wool-dridge entered into a lease agreement on July 1, 1987. Thereafter, on July 14, 1987, the sales agreement was executed between Christie and Wooldridge. Following the sale of the stock in the corporation, Mr. Wooldridge continued to pay certain insurance premiums and ad valorem taxes due on the real property. As owner of the property, he had personally paid those expenses when he had owned Abb’s Moving Service. Despite the fact that Wooldridge continued to pay the insurance premiums and taxes at issue in this appeal, the lease agreement entered into between the corporation and Wooldridge expressly states that Abb’s Moving would pay those expenses.
Wooldridge continued to pay the insurance premiums and taxes until his death in April 1988. Shortly thereafter, Gerald Wooldridge examined the lease and discovered that pursuant to the lease Abb’s was in fact liable for the insurance premiums and the taxes. Gerald notified Christie of the corporation’s obligations under the lease, and, following correspondence between the parties, the lease was amended in August 1988 to provide as follows:
“This amendment, made on the 3rd day of August 1988, to the LEASE of Warehouse Facilities located at 554 S. Royal St, the city of Mobile, Alabama modifies payment by the TENANT for ad valorem (property) taxes and fire insurance as defined by Item 4, NET LEASE and Item 18, FIRE INSURANCE as originally executed by H.A. Wooldridge, Jr., ‘LANDLORD’ and Abb’s Moving Service, ‘TENANT.’
“It is understood by all parties that H.A. Wooldridge, Jr., deceased, is represented by Gerald A. Wooldridge, Trustee for H.A. Wooldridge, Jr. and Sara P. Wooldridge, heir and co-owner of the lease property, hereinafter called ‘LANDLORD.’
“1. AD VALOREM (PROPERTY) TAXES
“Tenant shall pay to the Landlord yi2th of the estimated annual ad valorem taxes with each monthly rent installment. Any difference, greater or less than the sum *451 of monies paid by the Tenant and the actual tax bill shall be due and payable by DECEMBER 31ST OF THE TAX YEAR BY THE Tenant or Landlord as appropriate.
“2. FIRE INSURANCE PREMIUM “Tenant shall pay to the Landlord Vi2th of the annual fire insurance premium paid by the Landlord with each monthly rent installment.
“3. PAYMENT SCHEDULE
“These payments shall commence with the July 1, 1988 monthly installment and shall be due and payable on the first day of each consecutive month thereafter for the full term of the lease. Payments for ad valorem taxes and fire insurance prior to July 1, 1988 are hereby waived.
“4. BASIC LEASE
“All other requirements and conditions of the lease remain unchanged.”
Although Christie claims that the tax and insurance provisions in the original lease between Wooldridge and the corporation on the property in question were put into the lease by mistake, he offers no cogent argument as to why he should not be bound by the amendment, which he signed in August 1988. Clearly there is no question that Christie understood the terms of the amendment and, because the amendment clearly waives the payment by Abb’s Moving of any taxes or fire insurance premiums coming due prior to July 1, 1988, we find that the trial court did not err in holding Christie liable for payment of taxes and insurance premiums coming due after that date.
In addition, we hold that the trial court correctly assessed damages against Christie, with the exception of the penalties for late payments; those penalties amounted to $34,296.91. The total amount due as late rent was $38,632.12, with additional amounts being awarded for clean up of the property, etc. The total award was $95,-363.03. Christie claims that the award of late penalties in an amount almost equal to the rent due should be void as against public policy. Although we note that the trial judge did not separate the awarded sum of $95,313.03 into rent due, clean up expenses, etc., and late fees due, we note that he did state that the Wooldridges were entitled to all sums due pursuant to the lease. There is no dispute that the late fee totaled $34,296.91 and that it was determined pursuant to the following provision in the lease:
“It is understood and agreed between the parties hereto that the late payment of rent will cause additional expenses and inconvenience to the landlord; it is therefore agreed that if any installment of rent is more than five days late in payment then and in that event, the amount of such installment shall be increased by five per cent; and an additional five per cent shall be added thereto at the end of each thirty day period during which said installment or any part thereof shall remain unpaid. All such charges shall be secured as additional rent under this lease. Nothing herein contained shall be deemed to suspend or delay the payment of any amount of money or charge at the time the same becomes due and payable hereunder, or limit any other remedy of the landlord.”
This Court has stated:
“It is true in Alabama that, because penalty provisions are void as against public policy, ‘Courts ... are disposed to lean against any interpretation of a contract which will make the provision one for liquidated damages and, in all cases of doubtful intention, will pronounce the stipulated sum a penalty.’ Cook v. Brown, 408 So.2d 143, 144 (Ala.Civ.App.1981); see also, Keeble v. Keeble, 85 Ala. 552, 5 So. 149 (1888). In Alabama, liquidated damages are a sum to be paid in lieu of performance, Forsyth v. Central Foundry Co., 240 Ala. 277, 198 So. 706 (1940), while a penalty is characterized as a security for the performance of the agreement or as a punishment for default. Standard Tilton Milling Co. v. Toole, 223 Ala. 450, 137 So. 13 (1931). The courts generally identify three criteria by which a valid liquidated damages clause may be distinguished from a penalty. First, the injury caused by the breach must be difficult or impossible to accurately estimate; second, the parties *452 must intend to provide for damages rather than for a penalty; and, third, the sum stipulated must be a reasonable pre-breach [estimate] of the probable loss. See, C. Gamble and D. Corley, Alabama Law of Damages, § 5-4 (1982). Determining whether a liquidated damages provision is valid is a question of law to be determined by the trial court based on the facts of each case. Cook v. Brown, 408 So.2d 143 (Ala.Civ.App.1981).”
Camelot Music, Inc. v. Marx Realty & Improvement Co., 514 So.2d 987 (Ala.1987).
This Court has also said:
“An essential step toward understanding this matter is to recognize that ‘ “[t]he question is not what the parties intended, but ‘whether the sum is in fact in the nature of a penalty.’ ” ’ [Quoting Williston on Contracts, 682 (3d ed. 1961).]
“ ‘ “[T]he final determination of the question whether or not a stipulation should be construed as providing for a penalty [requires the courts to determine whether the stipulation provides for] ‘just compensation’ for injury resulting from the breach of the contract, and the controlling object should be to place the injured party in as advantageous [a] position as he would have occupied had his contract not been broken. So long as the contracting parties keep this principle in view, the courts will very generally allow them to agree upon such a sum as will probably be the fair compensation for the breach of a contract. But when they go beyond this, and undertake to stipulate, not for compensation, but for a sum entirely disproportionate to the measure of liability which the law regards as compensatory, the court will refuse to give effect to the stipulation and will confine the parties to such actual damages as may be pleaded and proved.
“ ‘ “In every case involving a contract providing for a fixed sum to be paid in the event of a breach, the real issue involved, therefore, is whether the contract adheres to the fundamental rule of ‘just compensation.’ ” [Quoting Pembroke v. Caudill, 160 Fla. 948, 37 So.2d 538 (1948).]
“ ‘In other words, calling a sum to be paid under a contract liquidated or stipulated damages will not prevent the court from treating it as a penalty.’
“Id. at 689-90.
“ ‘The only evidence that the court ever has before it, bearing on the issue whether the parties in good faith made such an estimate [the amount of “just compensation”], besides their statement in the contract [as to the name given to the sum to be paid] is the reasonableness in fact of the amount.’
“Id. at 694.
“ ‘[I]n other words, the reasonableness or unreasonableness of the stipulation is decisive.’
“Id. at 698.
“ ‘If the daily or weekly sum stipulated is out of proportion to any possible damage that could be caused by a delay, it will be [considered unreasonable and will be] held penal even for delayed performance.’
“Id. at 737-38.”
Milton Construction Co. v. State Highway Department, 568 So.2d 784, 789-90 (Ala.1990).
We have considered the argument that the late fee provisions of the lease should be declared a penalty and, therefore, void as against public policy. We conclude from a reading of the lease — which allows for a 5% charge for rent 5 days overdue and then an additional 5% charge for every 30 days thereafter that a portion of the rent is outstanding — that the lease imposes a penalty. From the record, it appears that Christie was charged 7 late penalties totaling $1400 for failure to pay the July 1990 rent of $4000. He was charged $1200 in late charges for the August 1990 rent of $4000. We consider such charges, equall-ing for some months approximately Vs of the rent, to be void as penalties. In light of this holding, we reverse that portion of the judgment assessing late charges and we remand the case for the court to determine an appropriate late charge. The remainder of the judgment is affirmed.
*453 AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HORNSBY, C.J., and STEAGALL, KENNEDY and INGRAM, JJ., concur.