We granted permission, pursuant to Rule 5, Ala.R.App.P., to appeal from a partial summary judgment entered for the defendant sellers in an action based on a contract for the sale of corporate stock. The judgment held that, as a matter of law, a liquidated damages clause in the agreement was a penalty and therefore void as against public policy. We reverse and remand.
The material facts are not disputed. Harold S. Sutton, M.D., and Roy T. Epperson, Sr., were the largest stockholders of Old Southern Life Insurance Company. Mr. Epperson Sr. was the chairman and chief executive officer of Old Southern Life for more than 25 years. Roy T. Epperson, Jr., was an officer in the corporation. Sutton had become dissatisfied with Epperson Sr.'s management of the closely held company and had caused a special meeting of the board of directors to be called for September 9, 1989. At that meeting, the board of directors voted to remove Epperson Sr. from further management of the company.
Epperson Sr. approached Sutton shortly after being ousted from his management position with the company with an offer either to buy Sutton's shares or to sell Sutton the Epperson family's shares for $2,000,000.
Sutton agreed to purchase the Eppersons' stock in Old Southern Life Insurance Company for $1,750,000. The Epperson stock was held in the names of various family members. Some shares were held in the name of Roy Epperson, Sr.; some were held in the name of his wife, Barbara Epperson; some in the name of Roy Epperson, Sr. or Roy Epperson, Jr.; still other shares were held in the joint names of Epperson Sr. and Epperson Jr.
Sutton retained a lawyer to draft a stock purchase agreement. The Eppersons were also represented by counsel. The stock purchase agreement was drafted by Sutton's lawyer and reviewed by the Eppersons' lawyer, who made several revisions, some of which were included in the contract. No objection was made to the liquidated damages provision. The agreement provided that Sutton was to purchase 247,261 shares from the Eppersons for $1,750,000, to be paid in yearly installments of $350,000, interest free. The agreement provided for Sutton to pay a $50,000 binder to the Eppersons at closing, the binder to be deducted from the first installment. The liquidated damages clause at issue is as follows:
 "12. If for any reason the Eppersons' title to the stock of Old Southern Life Insurance Company is found to be non-merchantable or if this transaction is disapproved *Page 834 
by the Commissioner of Insurance, the binder shall be refunded to Sutton and this contract shall terminate. If the Eppersons' title is merchantable, the agreement is approved by the Commissioner of Insurance of the State of Alabama, and Sutton fails or refuses to consummate the sale within the period allowed, the binder shall be retained by Eppersons as liquidated damages for the breach of this contract."
Sutton delivered his check in the amount of $50,000 to Epperson Sr. on March 9, 1990. On April 25, 1990, the date set for consummation of the sales agreement, the parties met to consummate the transaction. However, Epperson Jr., joint owner of some of the shares of stock with Epperson Sr., was not present and did not sign the escrow agreement signed by the remainder of the parties to the contract; nor did Epperson Jr. execute a stock transfer covering the shares held jointly with his father. All of the parties agree that the April 25th meeting was not a closing and could not have been because Epperson Jr. had not signed an irrevocable stock transfer. The next day, April 26, 1990, Sutton learned for the first time that the financial condition of Old Southern had significantly deteriorated. He was advised that Old Southern's new financial statement would show a loss of approximately $2 million and that the company was possibly insolvent. He immediately informed the Eppersons that he was withdrawing his offer and would not complete the purchase. The Eppersons negotiated Sutton's check for $50,000.
On May 25, 1990, the Eppersons sued Sutton, seeking damages for breach of the contract to buy their shares of stock in Old Southern. Sutton answered, raising the liquidated damages provision as a limitation on damages for the breach of contract. Both sides moved for summary judgment, and, after argument and briefs, the trial court entered a partial summary judgment in favor of the Eppersons, holding that the liquidated damages provision of the contract was punitive and therefore void as contrary to public policy. The trial court certified the issue as a controlling issue of law for purposes of Rule 5, Ala.R.App.P., and we granted permission to appeal under that rule.
The sole issue before this Court is whether the liquidated damages clause is a penalty and therefore void as against public policy.
At common law, courts refused to enforce a penalty set out in a contract, but did enforce pre-breach stipulations as to damages, but it was often difficult to distinguish between the two. "Was the sum . . . expressed in the contract . . . stipulated damages, or was it a mere penalty? Few questions in the law-books are more difficult of satisfactory solution, than [this] one. . . ." McPherson v. Robertson, 82 Ala. 459, 462,2 So. 333, 334 (1887).
In all of the other cases that have reached this Court, the breaching party has sought to escape the application of a liquidated damages provision by claiming that the provision was excessive and punitive. This is the first case in which the provision has been defended by the party who is obligated to pay the specified amount, and attacked as void by the party who is entitled to the payment. Here, the Eppersons have not offered to return the $50,000 stated in the contract to be liquidated damages in case of a breach by Sutton, but seek, in addition to the $50,000 that they have retained, additional damages from Sutton for his failure to perform under the agreement to purchase their stock. They also retain title to the shares of stock.
It is difficult to conclude that either party is being punished by this contractual provision so that it becomes a prohibited penalty under our cases. We have recently defined a penalty in this context to mean "a security for performance designed to punish one party for breach of contract."Milton Construction Co. v. State Highway Dep't, 568 So.2d 784,790 (Ala. 1990). Refusal to enforce penalty provisions in contracts dates back to medieval England, where the equity courts designed the rule to "prevent over-reaching" in oppressive and unfair contracts, Dobbs, Law of Remedies § 12(9) p. 246 (2d ed. 1993), and Corbin on Contracts § 1056 (1964), particularly contracts containing penal bonds executed between lenders and debtors whose bargaining powers were highly disproportionate, the debtor frequently being uneducated *Page 835 
and unsophisticated. Scholars frequently question the application of the rule in present-day commercial activities, particularly where the parties, as here, are represented by outstanding legal counsel and are, themselves, sophisticated businessmen. Dobbs, supra, at 246. "When two sophisticated parties, such as large corporations, include a liquidated damages provision that is essentially a penalty, it is difficult to understand why a court should necessarily concern itself with the matter (assuming, as always, that the provision was freely bargained)." David Brizzee, Note, Liquidated Damagesand the Penalty Rule: A Reassessment, 1991 B.Y.U.L.Rev. 1618 (1991), citing Lake River Corp. v. Carborundum Co.,769 F.2d 1284 (7th Cir. 1985).
Is there any overriding public policy that compels a court to invalidate and hold void this provision of a contract bargained for and agreed upon by two sophisticated businessmen, each of whom was represented by some of the best legal talent in the state? As the Court stated in Milton Construction Co. v. StateHighway Dep't, supra, the state constitution protects contractual obligations from impairment by the legislature or the judiciary, and the right of freedom of contract is a cherished one that courts are bound to protect. At 17 Am.Jur.2dContracts § 178 (1991), these principles are stated as follows:
 "The courts are averse to holding contracts unenforceable on the ground of public policy unless their illegality is clear and certain. Since the right of private contract is no small part of the liberty of the citizen, the usual and most important function of courts of justice is to maintain and enforce contracts rather than to enable parties thereto to escape from their obligations on the pretext of public policy, unless it clearly appears that they contravene public right or the public welfare. Rules which say that a given agreement is void as being against public policy are not to be extended arbitrarily, because 'if there is one thing which more than another public policy requires it is that men of full age and competent understanding shall have the utmost liberty of contracting, and that their contracts, when entered into freely and voluntarily, shall be enforced by courts of justice.' "
However, under the facts of this case, we cannot hold that the liquidated damages provision is a penalty, as defined by prior cases, requiring a judicial declaration that this contractual provision is void as against public policy.
This Court set forth the criteria for assessing the validity of liquidated damages clauses in Camelot Music, Inc. v. MarxRealty Improvement Co., 514 So.2d 987 (Ala. 1987):
 "It is true in Alabama that, because penalty provisions are void as against public policy, 'Courts . . . are disposed to lean against any interpretation of a contract which will make the provision one for liquidated damages and, in all cases of doubtful intention, will pronounce the stipulated sum a penalty.' Cook v. Brown, 408 So.2d 143, 144 (Ala.Civ.App. 1981); see also, Keeble v. Keeble, 85 Ala. 552, 5 So. 149 (1888). In Alabama, liquidated damages are a sum to be paid in lieu of performance, Forsyth v. Central Foundry Co., 240 Ala. 277, 198 So. 706 (1940), while a penalty is characterized as a security for the performance of the agreement or as a punishment for default. Standard Tilton Milling Co. v. Toole, 223 Ala. 450, 137 So. 13 (1931). The courts generally identify three criteria by which a valid liquidated damages clause may be distinguished from a penalty. First, the injury caused by the breach must be difficult or impossible to accurately estimate; second, the parties must intend to provide for damages rather than for a penalty; and, third, the sum stipulated must be a reasonable pre-breach [estimate] of the probable loss. See, C. Gamble and D. Corley, Alabama Law of Damages, § 5-4 (1982). Determining whether a liquidated damages provision is valid is a question of law to be determined by the trial court based on the facts of each case. Cook v. Brown, 408 So.2d 143 (Ala.Civ.App. 1981)."
514 So.2d at 990.
This Court has often stated the standard of review when determining whether a summary judgment is proper. MiltonConstruction Co. v. State Highway Dep't, supra. *Page 836 
 "Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56, A.R.Civ.P. All inferences must be viewed in the light most favorable to the non-moving party, and all reasonable doubts concerning the existence of a genuine issue of material fact must be resolved against the moving party."
568 So.2d at 785.
We apply the standards of Camelot Music to the factual inferences most favorable to the non-moving party, Sutton. If the liquidated damages clause fails to meet any one of the three criteria, it must fail as a penalty. Milton ConstructionCo. v. State Highway Dep't, 568 So.2d at 790.
First, the injury caused by the breach of the agreement is difficult to estimate accurately. The Old Southern Life stock is not publicly traded and, having no ready market, the value of the stock itself is difficult to ascertain. Second, the parties intended to provide for damages rather than a penalty. In setting the amount of the binder, the parties could have considered that if Sutton did not complete the sale, the Eppersons would, nonetheless, have incurred legal expenses. The binder could have been set at an amount expected to cover these legal expenses. Last, the sum stipulated as liquidated damages was a reasonable pre-breach estimate of the Eppersons' probable loss. Under these undisputed facts, we hold the liquidated damages clause to be a valid agreement on a reasonable sum to be paid as liquidated damages in case Sutton did not complete the agreement to buy the Eppersons' stock; it was not a penalty and therefore was not void as against public policy.
In American District Telegraph Co. of Alabama v. Roberts Son, Inc., 219 Ala. 595, 122 So. 837 (1929), this Court observed about a similar contractual provision:
 "As we view this clause, it is but a limitation of the amount recoverable in case of a breach of the contract. It is unlike those contracts or clauses construed by the courts as being invalid because providing a penalty though designated as liquidated damages.
 "The contract does not penalize the defendant for a failure to perform, and it only restricts the plaintiff as to its recovery in case of a breach by the defendant, and does not attempt to penalize or fix the damages against the plaintiff in case of a breach by it. It deals only with a breach by the defendant, and in no sense penalizes it for a breach. . . . Conceding, however, that, by limiting the amount of recoverable damages, it operates as a burden or hardship on the plaintiff, still we are not at liberty . . . to make a new contract for the parties or to strike . . . a clause well understood and evidently within the intention of the parties."
219 Ala. at 598, 122 So. at 839.
Because the liquidated damages clause at issue satisfies the three requirements set out in Camelot Music, and recognizing the Alabama Constitution's strong preference for the protection of contractual obligations, Milton Construction Co., 568 So.2d at 787, we reverse the judgment of the circuit court and remand the case for further consideration consistent with this opinion.
REVERSED AND REMANDED.
HORNSBY, C.J., and ADAMS, HOUSTON and KENNEDY, JJ., concur.