THOMAS, Judge.
 

 LaDerle Faulk appeals from a judgment of the Houston Circuit Court awarding him $2,500 in damages resulting from a failed commercial-real-estate transaction. We reverse and remand with instructions.
 

 Facts and Procedural History
 

 Faulk owned a parcel of commercial property containing a building in Dothan (“the property”). Faulk operated a business known as Mr. J’s Steakhouse on the property. In 2001, David Alexander approached Faulk with a prospective tenant who was interested in leasing the property — Wayne Blackmon. After Faulk declined to lease the property to Blackmon, Alexander then asked whether Faulk would be interested in selling the property. Thereafter, on May 15, 2001, Faulk entered into a 90-day exclusive listing agreement with Alexander.
 

 On August 15, 2001, Faulk and Reginald Rhodes entered into a contract (“the sales agreement”), which provided that Rhodes would purchase the property for $630,000. Alexander prepared the sales agreement
 
 *519
 
 at Rhodes’s direction and with Faulk’s approval. Among other terms, the sales agreement contained a contingency provision allowing Rhodes to cancel his purchase of the property without payment of damages if he could not locate a qualified tenant for the property and he notified Faulk of that fact in writing within 30 days. The contingency provision also provided for liquidated damages if Rhodes failed to notify Faulk of the failure of the contingency. The provision stated:
 

 “Should [Rhodes] not be able to secure a qualified tenant and enter into an acceptable written lease agreement therewith, within thirty (30) days after [Faulk] shall have executed this sales agreement, [Rhodes’s] earnest money shall, upon demand, be returned and [the sales agreement] shall become null and void. Should [Rhodes] fail to notify [Faulk] in writing that this contingency has not been met, if such shall be the case, within said thirty (30) days of the date [Faulk] shall have executed this agreement, [Rhodes’s] earnest money shall be forfeited as liquidated damages and divided equally, one-half to [Faulk] and one-half to [Alexander], Determination and/or qualification of tenant shall be at the sole discretion of [Rhodes].”
 

 The sales agreement also contained a separate liquidated-damages clause, which stated: “[Rhodes’s] earnest money shall be forfeited as liquidated damages and divided equally, one-half to [Faulk] and one-half to [Alexander], should [Rhodes] fail, for any reason, to abide in the timely manner prescribed by the terms and conditions stated herein to which he has agreed.” Alexander proposed to Rhodes that he lease the property to Blackmon. Black-mon desired to take possession of the property on September 1, 2001, a date before Rhodes and Faulk were scheduled to close the sale on the property. Rhodes testified that he informed Blackmon that Blackmon needed to discuss the issue with Faulk because Rhodes would not own the property on the date that Blackmon desired to take possession as a tenant; Faulk declined to enter into a lease with Black-mon. On August 31, 2001, Rhodes and Blackmon entered into a lease for the property.
 
 [1]
 
 On the same day, Rhodes and Faulk entered into a writing that was titled as an “addendum” to the sales agreement. The addendum provided:
 

 “Buyer has entered into a lease agreement with a third party and has received the first month’s rent in the amount of $5,500.00. Buyer and seller mutually agree that if the sale of the property does not close on or before September 1, 2001, the seller is entitled to a pro-rated amount of September rent until the day of closing.”
 

 The addendum also changed the purchasing party from Rhodes to R.A.R. Properties, L.L.C., and allocated the purchase price of $630,000 as $600,000 for the purchase of the property and $30,000 for a 5-year noncompete agreement. The addendum was signed by Rhodes and Faulk.
 
 [2]
 

 On September 1, 2001, Blackmon took possession of the property and began operating his restaurant. Blackmon’s initial rent check to Rhodes, for $13,000, was returned by the bank for insufficient funds; the bank notified Rhodes of this fact on September 14, 2001. That same day, which was the 30th day after Rhodes
 
 *520
 
 and Faulk had entered into the sales agreement, Rhodes orally notified Alexander that Rhodes had determined that Blackmon was not a qualified tenant and that Rhodes was declining to purchase the property. Alexander subsequently returned Rhodes’s earnest money. Black-mon did not vacate the property until October 21, 2001; he did not make any rent payments. Following the failure of the sale of the property, Faulk was unable to make his mortgage payments on the property; the bank foreclosed on the property the following year. Faulk later declared bankruptcy.
 

 We summarized the procedural history of this case in
 
 Faulk v. Rhodes,
 
 43 So.3d 624 (Ala.Civ.App.2010):
 

 “On July 18, 2002, LaDerle Faulk sued Reginald Rhodes, The Fletcher Moore Company, A.L. Trull, Rhodes Properties, LLC, and T. Graham Rhodes Properties, LLC.1 In Faulk’s complaint, he alleged a breach-of-contract claim and a claim seeking specific performance arising out of a failed commercial-real-estate transaction. Faulk amended his complaint in August 2002 to add a claim seeking moneys allegedly owed to Faulk according to the terms of a commercial-lease agreement entered into between Rhodes and Wayne Black-mon. On September 20, 2002, Rhodes moved the trial court, pursuant to Rules 19 and 20, Ala. R. Civ. P., to add Black-mon and William Hampton d/b/a Hampton Financial as necessary parties to the action. Rhodes also claimed that he had been named as a defendant in Faulk’s lawsuit because of Blackmon’s and Hampton’s failure to pay the amounts owed to Rhodes under a commercial lease. Rhodes filed in that same motion a cross-claim against Blackmon and Hampton alleging breach of contract for their breach of the lease. The trial court granted Rhodes’s motion.
 

 “In June 2008, Faulk moved the trial court, pursuant to Rule 15(b), Ala. R. Civ. P., to add R.A.R. Properties, LLC, as a defendant to the action and to add to his complaint a breach-of-contract claim against it.2 The trial court granted Faulk’s motion.
 

 “The trial court held a hearing on March 19, 2009, at which the trial court heard evidence presented ore tenus. Following the hearing, the trial court entered a judgment awarding Faulk $2,500 in damages on his breach-of-contract claim against Rhodes and R.A.R. Properties, LLC.3 The judgment did not address Faulk’s claim against Rhodes Properties, LLC, or Rhodes’s cross-claim against Blackmon and Hampton. Faulk filed a purported post-judgment motion pursuant to Rule 59(e), Ala. R. Civ. P., which the trial court denied.
 

 [[Image here]]
 

 " 1 The trial court entered a summary judgment in favor of A.L. Trull on all Faulk’s claims. T. Graham Rhodes Properties, LLC, was dismissed from the case by agreement of the parties. Faulk entered into a pro tanto settlement agreement with The Fletcher Moore Company, settling all Faulk’s claims against it. The claims against those defendants are not at issue on appeal.
 

 " 2 R.A.R. Properties, LLC, is wholly owned by Rhodes.
 

 " 3 At trial, Faulk orally abandoned his specific-performance claim, stating that the claim had become moot because the property in question had been foreclosed on by the mortgage holder.”
 

 43 So.3d at 624-25.
 

 Faulk appealed to this court. We dismissed Faulk’s appeal, holding that the trial court’s judgment was not final because it had not disposed of Faulk’s claim against Rhodes Properties, LLC, or Rhodes’s cross-claim against Blackmon and Hampton.
 
 Id.
 
 Subsequently, the trial court entered a judgment denying
 
 *521
 
 Faulk’s claim against Rhodes Properties, LLC, and denying Rhodes’s cross-claim against Blackmon and Hampton. Faulk appealed the trial court’s judgment to this court.
 

 Issues
 

 Faulk raises two issues in his appeal: (1) whether Rhodes was required to fulfill the terms of the sales agreement by closing on the property and (2) whether the liquidated-damages clause limited Faulk’s recovery for breach of contract.
 

 Standard of Review
 

 “
 
 ‘
 
 “
 
 ‘[W]hen a trial court hears ore tenus testimony, its findings on disputed facts are presumed correct and its judgment based on those findings will not be reversed unless the judgment is palpably erroneous or manifestly unjust.’ ” ’
 
 Water Works & Sanitary Sewer Bd. v. Parks,
 
 977 So.2d 440, 448 (Ala.2007) (quoting
 
 Fadalla v. Fadalla,
 
 929 So.2d 429, 438 (Ala.2005), quoting in turn
 
 Philpot v. State,
 
 843 So.2d 122, 125 (Ala.2002)). ‘ “The presumption of correctness, however, is rebuttable and may be overcome where there is insufficient evidence presented to the trial court to sustain its judgment.” ’
 
 Wattman v. Rowell,
 
 913 So.2d 1083, 1086 (Ala.2005) (quoting
 
 Dennis v. Dobbs,
 
 474 So.2d 77, 79 (Ala.1985)). Additionally, the ore tenus rule does not extend to cloak with a presumption of correctness a trial judge’s conclusions of law or the incorrect application of law to the facts.’
 
 Wattman v. Rowell,
 
 913 So.2d at 1086.”
 

 Retail Developers of Alabama, LLC v. East Gadsden Golf Club, Inc.,
 
 985 So.2d 924, 929 (Ala.2007).
 

 Analysis
 

 Faulk first argues that Rhodes was required to fulfill his obligation under the sales agreement to purchase the property because, Faulk says, Rhodes entered into a lease agreement with Blackmon, thus qualifying Blackmon as a tenant. However, the question whether Rhodes breached the sales agreement is not at issue in this case. Rhodes admitted at trial that he had breached the sales agreement because he did not give Faulk written notice that he had not secured a qualified tenant, as required by the sales agreement. We also note that Faulk abandoned his specific-performance claim at trial. Thus, the only issue for this court to consider on appeal is whether the trial court’s award of damages was proper.
 

 Faulk next argues that the liquidated-damages clause did not limit his recovery for Rhodes’s breach of the sales agreement because, Faulk says, the liquidated-damages clause constituted a penalty and, thus, was void.
 

 “Th[e Supreme] Court set forth the criteria for assessing the validity of liquidated damages clauses in
 
 Camelot Music, Inc. v. Marx Realty & Improvement Co.,
 
 514 So.2d 987 (Ala.1987):
 

 “Tt is true in Alabama that, because penalty provisions are void as against public policy, “Courts ... are disposed to lean against any interpretation of a contract which will make the provision one for liquidated damages and, in all cases of doubtful intention, will pronounce the stipulated sum a penalty.”
 
 Cook v. Brown,
 
 408 So.2d 143, 144 (Ala.Civ.App.1981);
 
 see also, Keeble v. Keeble,
 
 85 Ala. 552, 5 So. 149 (1888). In Alabama, liquidated damages are a sum to be paid in lieu of performance,
 
 Forsyth v. Central Foundry Co.,
 
 240 Ala. 277, 198 So. 706 (1940), while a penalty is characterized as a security for the performance of the agreement or as a punishment for default.
 
 Standard Tilton Milling Co. v. Toole,
 
 223 Ala. 450, 137 So. 13 (1931). The courts
 
 *522
 
 generally identify three criteria by which a valid liquidated damages clause may be distinguished from a penalty. First, the injury caused by the breach must be difficult or impossible to accurately estimate; second, the parties must intend to provide for damages rather than for a penalty; and, third, the sum stipulated must be a reasonable pre-breach [estimate] of the probable loss.
 
 See,
 
 C. Gamble and D. Corley,
 
 Alabama Law of Damages,
 
 § 5-4 (1982). Determining whether a liquidated damages provision is valid is a question of law to be determined by the trial court based on the facts of each case.
 
 Cook v. Brown,
 
 408 So.2d 143 (Ala.Civ.App.1981).’
 

 “514 So.2d at 990.”
 

 Sutton v. Epperson,
 
 631 So.2d 832, 835 (Ala.1993).
 

 In this case, the injury caused by the breach was difficult to accurately estimate at the time that Faulk and Rhodes entered into the sales agreement. The damages that Faulk claimed had been caused by Rhodes’s breach of the sales agreement included: that he could not make his mortgage payments on the property, resulting in the bank later foreclosing on the property; that the Internal Revenue Service and the State of Alabama filed liens against Faulk for unpaid taxes; and that Faulk was forced to file bankruptcy. The wide-ranging injuries and damages claimed by Faulk for Rhodes’s breach of the sales agreement would have been difficult to estimate or foresee at the time of the formation of the sales agreement. In addition, we find no evidence in the record that would indicate that the liquidated-damages clause was designed to act as a penalty. A penalty has been defined as “a security for performance designed to punish one party for breach of contract.”
 
 Milton Constr. Co. v. State Highway Dep’t,
 
 568 So.2d 784, 790 (Ala.1990). We see no evidence in the record that the liquidated-damages clause in this case was designed to secure performance by threat of punishment for breach of the sales agreement. Finally, we find that the amount of liquidated damages provided for in the sales agreement — $5,000—was a reasonable pre-breach estimate of Faulk’s probable loss. Although Faulk claims extensive damages for a multitude of injuries resulting from Rhodes’s failure to complete the purchase of the property, we cannot agree that, absent a determination by the trial court that those damages were in the specific contemplation of the parties at the time that they entered into the agreement, damages arising from potential tax liens, mortgage foreclosures, and bankruptcy filings were damages that were reasonable for the parties to have estimated before the breach. Therefore, we hold that the liquidated-damages clause was valid.
 

 Like the liquidated-damages clause at issue in
 
 Sutton,
 
 the liquidated-damages clause in this case is being attacked by the plaintiff, the nonbreaching party, who wishes to recover more than the amount allowed by the liquidated-damages clause. In
 
 Sutton,
 
 our supreme court recognized the unusual nature of a case involving a plaintiffs seeking to escape the enforcement of a liquidated-damage clause.
 
 Sutton,
 
 631 So.2d at 834. The
 
 Sutton
 
 court noted:
 

 “In
 
 American District Telegraph Co. of Alabama v. Roberts & Son, Inc.,
 
 219 Ala. 595, 122 So. 837 (1929), this Court observed about a similar contractual provision:
 

 “ ‘As we view this clause, it is but a limitation of the amount recoverable in case of a breach of the contract. It is unlike those contracts or clauses
 
 *523
 
 construed by the courts as being invalid because providing a penalty though designated as liquidated damages.
 

 “‘The contract does not penalize the defendant for a failure to perform, and it only restricts the plaintiff as to its recovery in case of a breach by the defendant, and does not attempt to penalize or fix the damages against the plaintiff in case of a breach by it. It deals only with a breach by the defendant, and in no sense penalizes it for a breach_ Conceding, however, that, by limiting the amount of recoverable damages, it operates as a burden or hardship on the plaintiff, still we are not at liberty ... to make a new contract for the parties or to strike ... a clause well understood and evidently within the intention of the parties.’
 

 “219 Ala. at 598,122 So. at 889.”
 

 Id.
 
 at 886. We see no reason to rewrite the sales agreement in this case, which was freely entered into by both parties, to allow Faulk to escape the operation of the liquidated-damages clause with regard to his claims of damages resulting from Rhodes’s breach of that agreement.
 

 However, the liquidated-damages clause does not foreclose Faulk from recovering the amount of rent due for the property for the month of September under the addendum to the sales agreement. One of the provisions in the addendum states that Faulk is entitled to the rents due from Blackmon for the month of September — from September 1, 2001, until the closing date. Rhodes never closed on the property, and Blackmon was a tenant for the entire month of September, thus entitling Faulk to receive the $5,500 in rent due from Blackmon for that month. Rhodes’s obligation to pay Faulk rent for the property for the month of September is separate and apart from any obligation to close on the property. Even absent a breach by Rhodes of his obligation to purchase the property, Rhodes still would have had an obligation to pay Faulk a prorated share of the rent due for the property for September. Thus, the liquidated-damages clause does not prevent Faulk from recovering the $5,500 in rent due for the month of September.
 

 Accordingly, we reverse the judgment of the trial court and remand the cause to that court with instructions for the trial court to award Faulk $8,000 in damages— $5,500 in damages for the unpaid rent payment in addition to the $2,500 the trial court had awarded Faulk under the liquidated-damages clause.
 
 [3]
 

 REVERSED AND REMANDED WITH INSTRUCTIONS.
 

 THOMPSON, P.J., and PITTMAN, BRYAN, and MOORE, JJ., concur.
 

 [1]
 

 . Rhodes signed the lease in his capacity as the sole member of R.A.R. Properties, L.L.C. The lease also listed T.G.R. Properties, L.L.C., and Dick's Rentals, L.L.C., as lessors.
 

 [2]
 

 . Rhodes signed the addendum in his capacity as the sole member of R.A.R. Properties, L.L.C.
 

 [3]
 

 . On appeal, Faulk also argues that he should have been awarded interest on the amount awarded under the liquidated-damages clause. However, Faulk did not first present this argument to the trial court; thus, we will not consider it. See
 
 DeFriece v. McCorquo-dale,
 
 998 So.2d 465, 472 (Ala.2008) (holding that a party "cannot now, in [an] appellate court, raise for the first time claims that were never made in the trial court”).