[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 04-15576
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 19, 2005
THOMAS K. KAHN
CLERK

D. C. Docket No. 02-00215-CV-PWG-M

RAY F. ROBBINS, II,

Plaintiff-Counter-Defendant-
Counter-Claimant-Appellee,

versus

WILLIAM J. SHEPPARD, JR.,

Defendant-Counter-Claimant-
Counter-Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(April 19, 2005)

Before BIRCH, BARKETT and HULL, Circuit Judges.

PER CURIAM:

Defendant William J. Sheppard Jr. appeals the district court's order granting summary judgment to plaintiff Ray F. Robbins II on Robbins's breach of contract claim. After review, we affirm.

## I. BACKGROUND

In April, 2001, defendant Sheppard met with Jon Betts to look at different tracts of land. Betts showed Sheppard a parcel of land known as the "Stevenson" tract and informed Sheppard that he (Betts) had been offered $1.4 million for the hardwood alone on the tract. The Stephenson tract is titled in the name of plaintiff Ray F. Robbins II.[1]

Sheppard asked Betts to provide him with the name of an outside appraiser, and Betts recommended Cliff Drouet. Drouet appraised the property, and based on this appraisal, Shepard believed that the Stevenson tract had an estimated timber value of $2.94 million. Sheppard also believed, again based on Drouet's appraisal, that only 300 - 400 acres had been cut and that the Stevenson tract still had 2,100 acres of merchantable timber.

On May 18, 2001, plaintiff Robbins agreed to a proposed draft of a sales

---

[1]The Stevenson tract was previously acquired by Robbins, Betts, and Kenneth Northrup. Pursuant to a verbal agreement among those purchasers, Robbins owns 50%, Betts owns 25%, and Northrup owns 25%. The entire property, however, is titled in Robbins's name alone. Neither Betts nor Northrop are parties to this appeal.

contract for the Stevenson tract for $2.9 million with $30,000 earnest money to be paid by Sheppard. During a subsequent meeting, defendant Sheppard negotiated a reduction in the proposed purchase price from $2.9 million to $2.7 million and plaintiff Robbins negotiated an increase in the earnest money from $30,000 to $60,000.[2]

On June 20, 2001, defendant Sheppard entered into a contract with plaintiff Robbins and Jon Betts to purchase the Stevenson tract, together with mineral rights and a one-half interest in the property's coal deposits, for a sum of $2.7 million.

Paragraph 7 of the contract clearly provides that the seller Robbins shall retain the earnest money of $60,000 if the purchaser Sheppard does not proceed with closing, as follows:

> 7. Purchaser shall have the right to market the timber on said property for 30 days from this date; however, no timber shall be cut or removed from said property, until Seller has been paid the full purchase price. Before the end of the 30th day from this date, Purchaser shall notify Seller in writing whether Purchaser shall proceed with closing. <u>In the event Purchaser does not want to proceed with closing then Seller shall retain the earnest money in the sum of $60,000.00</u> and Seller shall have no right to specific performance. In the event Purchaser gives notice to proceed with closing, then the sale shall be closed and the deed delivered within sixty

---

[2]Defendant Sheppard indicates that when he told plaintiff Robbins that Drouet had appraised the timber on the Stevenson tract at $2.9 million, Robbins replied that he believed that there was between $2.6 and $3 million worth of timber on the tract.

(60) days from the date of execution of this contract.

Paragraph 11 of the contract similarly provides that the earnest money would be forfeited if the purchaser Sheppard failed to carry out the contract, as follows:

> 11. Should the Purchaser fail to carry out this contract, in accordance with its provisions, the earnest money paid by Purchaser shall be forfeited as liquidated damages and shall become the property of the Seller.

That same day, defendant Sheppard delivered a check, post-dated July 25, 2001, to plaintiff Robbins in the amount of $60,000.

Sheppard then applied for a loan at a bank in Cullman, Alabama, to obtain the necessary funds to complete the purchase. Drouet accompanied Sheppard to the bank and spoke with the bankers, but the bankers indicated that they would not make a loan to cover the transaction. On July 20, 2001, Drouet took bids from timber bidders. When the bidding was completed, Sheppard asked John Neyman of Coosa River Timber Company his opinion of the value of all of the merchantable timber on the Stevenson tract. Neyman replied that Sheppard should not expect more than $750,000 for the timber that could be harvested on the property.

On July 23, defendant Sheppard called plaintiff Robbins and told him that he would be borrowing money to close the transaction. Sheppard asked for an

4

extension of the deadline to close and asked that Robbins not deposit the $60,000 check until closing. Robbins agreed to an extension until August 1, 2001, and agreed to hold the check until that date. On July 30, 2001, Sheppard called Robbins and asked to meet with him on August 1, 2001. Sheppard also confirmed that he would be prepared to close within a week.

However, at the August 1, 2001 meeting Sheppard gave Robbins a letter, indicating for the first time that he did not intend to proceed with the sale. That same day, Robbins attempted to deposit Sheppard's check, but it was returned with a "stop payment order." Sheppard told Robbins that the check was "no good" and that it "had never been good at the time he wrote it." Sheppard claims that he could not perform on the contract because he would be unable to realize enough proceeds from timber sales to cover the purchase price.

On January 28, 2002, Robbins filed a complaint against Sheppard for breach of contract and fraudulent misrepresentation as to the $60,000 payment. Robbins asked for the $60,000 in earnest money, additional compensatory damages, and $500,000 in punitive damages.

Sheppard filed counter-claims against Robbins for fraud and breach of contract regarding both the Stevenson tract and another land sale.[3] On October 14,

_____

[3]Sheppard also included claims against Drouet, Betts, Northrup, and North Alabama Forest Products, Inc., a company owned by Betts and Northrup, for fraud and breach of contract

2003, Sheppard dismissed all of his counter-claims against Robbins. Robbins amended his complaint by dismissing his fraud claim and reducing his damages claim to only a request for the $60,000 in earnest money.

On September 30, 2004, the district court granted Robbins's motion for summary judgment, denied Sheppard's motion for summary judgment, and entered judgment in Robbins's favor in the amount of $60,000. Sheppard appealed.[4]

## II. DISCUSSION

After review, we conclude that the district court properly granted summary judgment to plaintiff Robbins for several reasons.

## A. Plain Meaning of the Contract

First, the contract in question clearly provided that the seller would retain the $60,000 if the purchaser did not want to proceed with closing. Sheppard, the purchaser, did not proceed with closing and Robbins, the seller, was therefore entitled to retain the $60,000. Given the clear language in the contract that the seller would retain the $60,000 if the purchaser did not close, the district court

_____

in connection with the two land purchases. Sheppard's claims against these additional parties were resolved by settlement and are not involved in this appeal.

[4]We review a district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to the party opposing the motion. Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1085 (11th Cir. 2004). "Summary judgment is appropriate if the record shows no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Witter v. Delta Air Lines, Inc., 138 F.3d 1366, 1369 (11th Cir. 1998) (quotation marks and citation omitted).

6

simply effectuated the unambiguous terms of the contract.

The parties dispute at length whether the contract in issue was an option to purchase. However, we need not resolve that issue because under the plain language of the contract Robbins, as seller, was entitled to retain the money whether it was earnest money or consideration for an option. See Stewart v. Robertson, 490 So.2d 13, 14 (Ala. Civ. App. 1986) ("As a general rule, [earnest] money is subject to forfeiture if the purchaser defaults on the contract.").

**B.     Liquidated Damages or Penalty**

We also agree with the district court that the $60,000 is enforceable liquidated damages and does not amount to an unenforceable penalty. A liquidated damages provision is an amount to be paid for breach of contract, which the parties agree is an adequate assessment of damages which would result from the breach. Cook v. Brown, 408 So.2d 143, 144 (Ala. Civ. App. 1981). In determining whether a liquidated damages provision is enforceable, courts in Alabama discern: (1) whether the injury caused by the breach is difficult or impossible to discern; (2) whether the parties intended to provide for damages rather than a penalty, and (3) whether the stipulated sum is a reasonable pre-breach estimate of probable loss. Sutton v. Epperson, 631 So.2d 832, 835 (Ala. 1993). "If one of these three criteria is not met, the clause must fail as a penalty." Milton Constr. Co. v. State Highway

7

Dep't, 568 So.2d 784, 790 (Ala. 1990).

Here, the primary cost to Robbins was the opportunity cost in his ability to put his property on the market. The value of that lost opportunity is not readily discernible without the assistance of some presumably costly and sophisticated economic analysis. With respect to the second prong, the fact that Robbins bargained away a specific-performance remedy, in conjunction with the fact that the $60,000 amount was only 2.2% of the overall purchase price of $2.7 million, suggest that the parties intended to compensate Robbins for what he lost rather than secure Sheppard's performance by punishing his default. See Camelot Music, Inc. v. Marx Realty & Improvement Co., 514 So.2d 987 (Ala. 1987) ("a penalty is characterized as a security for the performance of the agreement or as a punishment for default"). Finally, given the relative sophistication of the parties to this transaction, the uncertainty in calculating Robbins's loss, and the relatively modest 2.2% relationship between the sum of $60,000 to the $2.7 million purchase price for the land, we conclude that $60,000 was a reasonable estimate of the loss that Robbins incurred by precluding himself, from selling the Stephenson tract to others during the term of his contract with Sheppard.[5]

_____

[5]The cases that Sheppard relies upon involved liquidated damages which were a far greater proportion of the overall cost of the land itself or, in other words, damages which were not reasonable estimates of probable loss. In Cook, the earnest money which was to be forfeited if the buyer breached was $10,000 compared to a total purchase price of $123,000, or 8.1% of

8

## C.     Mistake

We also reject Sheppard's vague assertion that his there was a mutual mistake which excused his performance under the contract.  Sheppard contends that the evidence suggesting that the land was worth much less than he originally believed raises a substantial question as to whether his performance should be excused as the result of a mistake.  Specifically, Sheppard indicates that he believed that the Stephenson tract had an estimated timber value of $2.94 million, that there would be enough proceeds from timber sales to make the $2.7 million payment, and that Drouet's appraisal led him to believe that only three to four hundred acres of merchantable timber had been cut and twenty-one hundred acres remained.

While Sheppard may have made a mistake, nothing in the record shows that there was a <u>mutual</u> mistake.  <u>See</u> <u>Cobern v. Foshee</u>, 128 So. 779, 780 (Ala. 1930) (a party must prove that there was a <u>mutual</u> mistake by the contracting parties for a court to reform the contract); <u>Kant v. Atlanta, B. & A. R. Co.</u>, 66 So. 598, 599 (Ala. 1914) ("A mistake or misunderstanding of one party to a transaction,

---

the purchase price.  408 So.2d at 143-44.  And in <u>Southpace Properties, Inc. v. Acquisition Group</u>, this Court found that a stipulated damages clause giving a real estate broker a 6% commission of a $1.6 million listing price (which amounts to $96,000) in addition to costs and expenses if the property owner breached not only would have overcompensated the broker, but also would have given the broker more than it would have earned had it actually located a buyer. 5 F.3d 500, 505-06 (11th Cir. 1993).

sometimes styled a 'unilateral mistake,' will not authorize[] the reformation of a written instrument; since, in order to reform a contract, it must appear that the parties mutually intended something different from that expressed." (citation omitted)). Both parties identified the specific tract of land being sold. While Sheppard now complains that he believed that there was more merchantable timber on the land than in fact there was, he was given the opportunity to have the land appraised, and in fact did so. The only mistake was Sheppard's initial determination, based on the appraisal, that the timber on the land was worth more than he now believes it to be worth.

## D. Parties Not Joined

Sheppard lastly argues that Betts and Northrup, as Robbins's joint-venturers, are necessary parties to any claim brought by Robbins for the $60,000. Whether Robbins has agreed to divide the proceeds from the $60,000 with Betts and Northrup is irrelevant to the resolution of this case. It is Robbins who has title to the Stevenson tract, and it is he who is identified in the contract as the seller. The rights that Betts and Northrup (or any lienholder for that matter) have, vis-a-vis Robbins, have no bearing on Robbins's contract claim against Sheppard for the $60,000.

## III. CONCLUSION

For all of the above reasons, this Court affirms the district court's order denying Sheppard's motion for summary judgment, granting Robbins's motion for summary judgment, and entering judgment in favor of Robbins, and against Sheppard, in the amount of Sixty Thousand ($60,000.00) Dollars.

**AFFIRMED.**