[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 962 
The defendant/counterplaintiff Stone-brook Development, L.L.C. ("Stone-brook"), appeals a judgment entered following the second bench trial of this action, and the plaintiff/counterdefendant Matthews Brothers Construction Company, Inc. ("Matthews Brothers"), cross-appeals. We affirm in part, reverse in part, and remand with instructions.
This is the second time these parties have been before this court. An appeal by Matthews Brothers following the entry of a judgment after the first bench trial resulted in this court's decision in Matthews Brothers Construction Co. v.Stonebrook Development, L.L.C., 854 So.2d 573
(Ala.Civ.App. 2001), aff'd, Ex parte Stonebrook Development,L.L.C., 854 So.2d 584 (Ala. 2003).
 Factual Background
On June 1, 1994, Stonebrook entered into a written contract with Matthews Brothers in which Matthews Brothers agreed to build the roads in a residential subdivision in Elmore County in accordance with plans and specifications prepared by Bill N. Sanford and Sanford, Bell Associates, Inc. ("SB"), for a total price of $203,878.08. The contract required Matthews Brothers to begin the work on June 11, 1994, and to complete the work by August 11, 1994. In addition, the contract contained the following material provisions:
 "5. Retainage: 10% retainage shall be withheld from periodic payments [to Matthews Brothers] until final inspection [and] approval by Elmore County Commission. *Page 963 
 "After final inspection and approval by the County Engineer, then the balance of contract payments plus all retainage withheld shall be due by the 10th of the following month.
 . . . .
 "8. Liquidated Damages: [Matthews Brothers] is aware of the critical time schedule for completion of the contract work and hereby agrees to reimburse [Stonebrook] for damages caused by not completing the Contract work specified within the time period shown hereon. The amount of damages shall be calculated at a rate equal to 1/2 of one percent of the total contract price, multiplied by the number of days [Matthews Brothers] has exceeded the completion time schedule shown in Paragraph 7. "9. Time Extensions: Contract time extensions shall be granted by [Stone-brook] for delays caused by `Act of God' including rain falls prohibiting 6 hrs. of work in one calendar day, or other delays caused by [Stonebrook] o[r] other parties not in the employ or contractual control of [Matthews Brothers]. [Matthews Brothers] must request time extensions within 2 weeks of occurrence of the loss of time. The [project] Engineer shall be the final authority on granting or denying requests for time extensions and such extensions shall be [granted or denied by] written notification within 2 weeks of receipt of request or said request shall be assumed to be accepted."
Sanford, who was a principal in both Stonebrook and SB, served as the project engineer.
Matthews Brothers did not complete the work required by the contract until sometime in December 1994. Thereafter, Stonebrook paid Matthews Brothers the 10% retainage Stonebrook had been withholding from its payments to Matthews Brothers. In 1995, Matthews Brothers returned to the job at Stonebrook's request and made repairs to the roads. In February 1997, Matthews Brothers sent Stonebrook a bill in the amount of $42,049.96 for the repair work it had performed in 1995. Stonebrook refused to pay this bill because, Stonebrook said, Matthews Brothers had warranted that its work under the contract was free from defects and the repair work was necessary because of defects in Matthews Brothers' work.
 Procedural History
In 1997, Matthews Brothers sued Stone-brook, seeking to recover the $42,049.96 Matthews Brothers had billed Stonebrook for the 1995 repair work. Matthews Brothers claimed that it was entitled to the money under theories of open account, account stated, and work and labor done. Stonebrook denied liability and asserted counterclaims of breach of contract and breach of warranty. Under its breach-of-contract counterclaim, Stonebrook sought to recover liquidated damages for Matthews Brothers' failure to complete its work under the contract by August 11, 1994. In response to the counterclaims, Matthews Brothers denied liability and asserted a third-party claim against Sanford and SB. Matthews Brothers' third-party claim alleged that, because Sanford and SB had been negligent in preparing the plans and the specifications for the roads that Matthews Brothers had to build, Matthews Brothers was entitled to a judgment against Sanford and SB reimbursing Matthews Brothers for any judgment against it under Stonebrook's counterclaims.
The trial court entered a Rule 12(b)(6), Ala. R. Civ. P., dismissal of Matthews Brothers' third-party claim against Sanford and SB; entered a partial summary judgment in favor of Stonebrook on its breach-of-contract counterclaim and awarded it liquidated damages in the *Page 964 
amount of $155,966.73 under that counter-claim; and, following a bench trial, entered a judgment finding in favor of Stonebrook with respect to Matthews Brothers' claims against Stonebrook, finding in favor of Stonebrook with respect to Stonebrook's breach-of-warranty counterclaim, and awarding Stonebrook compensatory damages in the amount of $27,604.50 under its breach-of-warranty counterclaim. Matthews Brothers then appealed.
In Matthews Brothers Construction Co. v. StonebrookDevelopment, L.L.C., supra, this court reversed the dismissal of Matthews Brothers' third-party claim, reversed the partial summary judgment in favor of Stonebrook on its breaeh-of-contract counterclaim, reversed the judgment finding in favor of Stonebrook with respect to its breach-of-warranty counterclaim and Matthews Brothers' claims against Stone-brook, and remanded the action with instructions to the trial court to conduct a new trial.
On remand, the trial judge who had presided in the first bench trial recused himself, and a new trial judge was assigned. Upon the motion of Stonebrook, the trial judge dismissed Stonebrook's breach-of-warranty counterclaim. The trial judge then held a bench trial at which he received evidence ore tenus. On June 29, 2005, the trial judge entered the following interlocutory judgment:
 "Upon hearing the evidence on the original complaint by Matthews Brothers Construction as against Stonebrook Development and upon the Defendant Stonebrook Development as against Matthews Brothers Construction on the Counter-claim, Breach of Contract claim, this Court hereby finds judgment in favor of Stonebrook Development, LLC and against Matthews Brothers Construction, Inc. in the sum of $27,500.00 plus cost of Court."
Although the June 29, 2005, judgment was not a final judgment because it did not adjudicate Matthews Brothers' third-party claim against Sanford and SB, Matthews Brothers appealed the June 29, 2005, judgment to this court, and Stonebrook cross-appealed. This court dismissed that appeal and cross-appeal because they were based on a nonfinal judgment. On January 11, 2007, the trial court entered the following judgment:
 "The judgment of June [29], 2005 is set aside and the following is substituted:
 "1. Judgment is hereby entered in favor of Stonebrook Development, LLC and against Matthews Brothers Construction, Inc. in the sum of $27,500.00 plus cost of Court on the counter-claim for breach of contract.
 "2. Judgment is entered in favor of Stonebrook Development LLC on the original complaint by Matthews Brothers Construction, Inc.
 "3. Judgment is entered in favor of Bill N. Sanford and Sanford, Bell Associates on the Third Party Complaint as filed by Matthews Brothers Construction, Inc.
 "Costs taxed as paid."
Stonebrook then appealed to this court, contending that the trial court had erred by awarding Stonebrook an insufficient amount of liquidated damages. Matthews Brothers cross-appealed, contending that the trial court had erred in finding in favor of Stonebrook with respect to (1) Stonebrook's breach-of-contract counterclaim and (2) Matthews Brothers' claims against Stonebrook.
 Analysis The Trial Court's Finding in Favor of Stonebrook on its Breach-of-Contract Counterclaim
As relief for Matthews Brothers' alleged breach of the contract provision requiring *Page 965 
Matthews Brothers to complete its work by August 11, 1994, Stonebrook claimed liquidated damages in the amount of $1,019 per day for the 153 days between August 11, 1994, the deadline for Matthews Brothers to complete its work under the contract, and January 11, 1995, the date when Elmore County approved the subdivision plat.[1] Thus, Stonebrook claimed a total of $155,907 in liquidated damages. The trial court found in favor of Stonebrook on its breach-of-contract counterclaim; however, the trial court awarded an amount of damages, $27,500, that is not a multiple of $1,019.
Matthews Brothers argues that the trial court erred in finding in favor of Stone-brook on this counterclaim because, Matthews Brothers says, the liquidated-damages provision of the contract actually provided for a penalty rather than liquidated damages. In Camelot Music, Inc. v. Marx Realty ImprovementCo., 514 So.2d 987 (Ala. 1987), the supreme court stated:
 "It is true in Alabama that, because penalty provisions are void as against public policy, `Courts . . . are disposed to lean against any interpretation of a contract which will make the provision one for liquidated damages and, in all cases of doubtful intention, will pronounce the stipulated sum a penalty.' Cook v. Brown, 408 So.2d 143, 144
(Ala.Civ.App. 1981); see also, Keeble v. Keeble, 85 Ala. 552, 5 So. 149 (1888). In Alabama, liquidated damages are a sum to be paid in lieu of performance, Forsyth v. Central Foundry Co., 240 Ala. 277, 198 So. 706 (1940), while a penalty is characterized as a security for the performance of the agreement or as a punishment for default. Standard Tilton Milling Co. v. Toole, 223 Ala. 450, 137 So. 13 (1931). The courts generally identify three criteria by which a valid liquidated damages clause may be distinguished from a penalty. First, the injury caused by the breach must be difficult or impossible to accurately estimate; second, the parties must intend to provide for damages rather than for a penalty; and, third, the sum stipulated must be a reasonable pre-breach [estimate] of the probable loss. See, C. Gamble and D. Corley, Alabama Law of Damages, § 5-4 (1982). Determining whether a liquidated damages provision is valid is a question of law to be determined by the trial court based on the facts of each case. Cook v. Brown, 408 So.2d 143
(Ala.Civ.App. 1981)."
514 So.2d at 990.
In its brief to this court, Matthews Brothers concedes that the circumstances of this case satisfy the first two criteria that, according to the supreme court in Camelot Music, Inc., distinguish liquidated damages from a penalty. That is, Matthews Brothers concedes (1) that the injury caused by Matthews Brothers' failure to complete its work by August 11, 1994, is difficult or impossible to accurately estimate, and (2) that the parties intended to provide for damages rather than for a penalty. However, Matthews Brothers argues that the sum specified, i.e., one-half of one percent of $203,878.08 per day, was not a reasonable pre-breach estimate of the probable loss Stonebrook would sustain if Matthews Brothers failed to complete its work by August 11, 1994. *Page 966 
Stonebrook, on the other hand, argues that one-half of one percent of $203,878.08 per day was a reasonable pre-breach estimate of the probable loss. Sanford testified that that amount was based on his estimate of the additional expense Stone-brook would incur if Matthews Brothers did not complete its work by August 11, 1994. Sanford testified that Stonebrook could not obtain approval of its subdivision plat by Elmore County until the roads were completed and that Stonebrook could not sell lots in the subdivision until the subdivision plat was approved; consequently, Matthews Brothers' delay in completing the roads caused a delay in Stonebrook's generating revenue to pay off the loan it had used to finance its purchase of the land and thus caused Stonebrook to incur additional interest on the loan. Sanford further testified that Stonebrook lost some of the potential buyers who had expressed interest in buying lots in the sub-division because the delay in the completion of the roads delayed the approval of the subdivision plat. Sanford also testified that Stonebrook incurred a loss in the form of money it had spent to advertise and prepare for the grand opening of the subdivision that was scheduled for October 1994; the grand opening could not be held in October 1994 because the roads had not been completed by then.
The trial judge based his judgment on conflicting ore tenus evidence and made no specific findings of fact. Under these circumstances, our review is governed by the following principles:
 "Because the trial judge made no specific findings of fact, this Court will assume that the trial judge made those findings necessary to support the judgment. Under the ore tenus rule, the trial court's judgment and all implicit findings necessary to support it carry a presumption of correctness and will not be reversed unless `found to be plainly and palpably wrong.' `The trial court's judgment in such a case will be affirmed, if, under any reasonable aspect of the testimony, there is credible evidence to support the judgment.'"
Transamerica Commercial Fin. Corp. v. AmSouth Bank,N.A., 608 So.2d 375, 378 (Ala. 1992) (citations omitted).
Given Sanford's testimony that the amount of liquidated damages specified by the contract was based on his pre-breach estimate of the damages Stonebrook would incur if Matthews Brothers did not complete the roads by August 11, 1994, and his testimony regarding the losses Stonebrook actually sustained because the roads were not completed by August 11, 1994, we cannot hold that the trial court's implicit finding that the amount of liquidated damages specified by the contract was a reasonable pre-breach estimate of the loss Stonebrook would sustain if Matthews Brothers failed to complete the roads by August 11, 1994, is so unsupported by the evidence as to be plainly and palpably wrong.
Matthews Brothers also argues that the trial court erred in finding in favor of Stonebrook on its breach-of-contract counterclaim because, Matthews Brothers says, the evidence established that Matthews Brothers was not responsible for most, if any, of the factors that delayed the performance of its work. Specifically, Matthews Brothers argues that the evidence established that the delays were caused by the "prairie gumbo" soil on which Matthews Brothers had to build the roads, the excessive rainfall that occurred while the roads were being built, and Sanford and SB's defective designs for the roads. However, the trial judge had before him conflicting substantial evidence regarding the causes of Matthews Brothers' failure to complete its work by August 11, 1994. Stonebrook introduced substantial *Page 967 
evidence tending to prove that Matthews Brothers did not complete its work by August 11, 1994, because it had devoted most of its resources to performing other jobs between June 11, 1994, and August 11, 1994, rather than because of the prairie gumbo soil, the rainfall, or the design of the roads. Given the evidence introduced by Stonebrook, we cannot hold that the trial court's finding in favor of Stonebrook on its breach-of-contract counterclaim is so unsupported by the evidence as to be plainly and palpably wrong. SeeTransamerica Commercial Fin. Corp., supra.
Stonebrook argues that the trial court erred because it awarded Stonebrook liquidated damages in the amount of $27,500 instead of the full $155,907 claimed by Stonebrook. Based on the evidence before it, the trial court could have found that Matthews Brothers was responsible for some, but not all, of the 153 days of delay claimed by Stonebrook. Therefore, the fact that the trial court awarded Stone-brook less than the full $155,907 it claimed does not ipso facto render the award erroneous. However, we note an apparent inconsistency in the trial court's judgment regarding this counterclaim. By stating, without qualification, that it found in favor of Stonebrook on its breach-of-contract counterclaim, the trial court implied that it found that Matthews Brothers was responsible for all 153 days of delay claimed by Stonebrook, yet the amount of damages the trial court awarded implies that the trial court found that Matthews Brothers was responsible for substantially fewer than 153 days of delay. Moreover, the amount of damages the trial court awarded is not a multiple of $1,019, which is the amount that the uncontroverted evidence established was the perdiem amount of liquidated damages specified by the contract.[2] Therefore, we must reverse the judgment with respect to Stonebrook's breach-of-contract counterclaim and remand the action with instructions to the trial court to clarify its judgment with respect to that counterclaim by specifying the number of days of delay for which it finds that Matthews Brothers is responsible and awarding an amount of damages calculated by multiplying $1,019 by the number of days of delay for which it finds Matthews Brothers is responsible.
 The Trial Court's Finding in Favor of Stonebrook on Matthews Brothers' Claims
Matthews Brothers' argument regarding its claims against Stonebrook consists of the single conclusory statement that "[t]he Stonebrook defendants are liable to Matthews [Brothers] for the additional work in the amount of $42,049.96." (Appellee's brief at p. 32.) "`When an appellant fails to properly argue an issue, that issue is waived and will not be considered. Boshell v. Keith, 418 So.2d 89 (Ala. 1982).' Asam v. Devereaux, 686 So.2d 1222, 1224
(Ala.Civ.App. 1996)." Tucker v. Cullman-Jefferson CountiesGas Dist., 864 So.2d 317, 319 (Ala. 2003). Therefore, we do not consider the issue whether the trial court erred in finding in favor of Stonebrook on Matthews Brothers' claims.
 The Trial Court's Finding in Favor of Sanford and SB on Matthews Brothers' Third-Party Claim
Although a heading within the argument section of Matthews Brothers' brief to this court asserts, in part, that the trial court's finding in favor of Sanford and SB on Matthews Brothers' third-party claim is controverted by the evidence, Matthews Brothers' brief contains no other argument regarding this issue; it does not state what evidence controverts that finding of the trial court, and it cites no authority *Page 968 
indicating that the trial court's finding in favor of Sanford and SB was erroneous. Therefore, we do not consider the issue whether the trial court erred in finding in favor of Sanford and SB on Matthews Brothers' third-party claim.Tucker v. Cullman-Jefferson Counties Gas Dist., supra.
 Conclusion
We reverse the judgment below insofar as it found in favor of Stonebrook on its breach-of-contract counterclaim and remand the case with instructions to clarify its judgment regarding that issue by specifying the number of days of delay for which it finds that Matthews Brothers is responsible and by awarding an amount of damages calculated by multiplying $1,019 by the number of days of delay for which it finds that Matthews Brothers is responsible. In all other respects, we affirm the judgment below.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
PITTMAN, J., concurs.
THOMPSON, P.J., and THOMAS and MOORE, JJ., concur in the result, without writing.
[1] The contract provided for liquidated damages of one-half of one percent of the total contract price of $203,878.08, multiplied by the number of days beyond the completion deadline it took Matthews Brothers to complete the work. One-half of one percent of $203,878.08 is $1,019.39. However, at trial, Stonebrook rounded the amount it was claiming to $1,019 per day. $1,019 multiplied by 153 days equals $155,907.
[2] See footnote 1.